RUPERT RIBNIK, PROSECUTOR, v. ANDREW F. McBRIDE, COMMISSIONER OF LABOR OF THE STATE OF NEW JERSEY, DEFENDANT.

Submitted January 30, 1926—Decided June 24, 1926.

Employment Bureaus — Licensing — Constitutionality of Act — Prosecutor Alleges Commissioner of Labor Acted Unconstitutionally in Refusing Him a License to Maintain an Employment Bureau—Reasons for Refusal Were That Prosecutor Had Previously Maintained Such a Bureau Without a License With Full Knowledge of the Law, and That the Commissioner was Unable to Approve the Proposed Schedule of Fees—It was Not Alleged That the Commissioner Had Unreasonably or Arbitrarily Exercised His Power, but That His Exercise of Power was Unconstitutional—Held, That Laws of 1918, Chap. 227, Provides a Constitutional Exercise of the Police Power, That the Power to License May be Vested in a Commissioner Within Certain Limits, and Unless the Statute Provides Fixed Rules the Commissioner Has Reasonable Discretion in Its Exercise.

On *certiorari*, &c.

Before Justices TRENCHARD and KATZENBACH.

For the prosecutor, *Lum, Tamblyn & Colyer* (*Egbert J. Tamblyn* and *Chester W. Fairlie*, of counsel).

For the defendant, *Edward L. Katzenbach*, attorney-general, and *Grover C. Richmond*, second assistant attorney-general.

PER CURIAM.

This writ brings up for review the action of the commissioner of labor of the State of New Jersey in refusing to issue a license to the prosecutor to carry on an employment agency in this state.

The prosecutor applied under the provisions of *Pamph. L.* 1918, *p.* 822, *ch.* 277, entitled "An act to regulate the

keeping of employment agencies." The refusal of the commissioner to grant the license applied for is based upon the ground that he could not approve in its entirety, the prosecutor's proposed schedule of fees to be charged in the conduct of the agency.

The prosecutor states in his brief that "the only question involved on this *certiorari* is whether the commissioner's approval of the fees proposed to be charged by prosecutor for the services to be rendered by him to his clients can be made a condition precedent to the prosecutor's right to engage in that business in this state—that is, whether said act, in so far as it purports to confer upon the commissioner of labor power and authority to fix, determine, limit, restrict or regulate the fees to be charged by the applicant for his services, is constitutional under our state constitution and under the federal constitution."

We think that the questions thus raised and argued are determined in substance and effect adversely to the contention of the prosecutor by the principles declared by the Court of Errors and Appeals in the case of *McBride* v. *Clark*, 2 *N. J. Mis. R.* 814, in reviewing proceedings under the same act. There it was held that the provisions of the statute requiring license and regulating the business, and empowering the commissioner (under section 10) to refuse to issue license for any good cause shown, did not violate (1) the fifth amendment of the federal constitution, which provides, "nor shall any person * * * be deprived of life, liberty or property without due process of law;" nor (2) the fourteenth amendment of the federal constitution, which provides "nor shall any state deprive any person of liberty, life or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law;" nor (3) section 1, article 1 of the state constitution, which provides that "all men are by nature free and independent, and have certain * * * inalienable rights, amongst which are those of enjoying and defending life and liberty; acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness." Those are the con-

stitutional provisions which it is contended in the present case were violated by the statute.

In the Clark case it was pointed out that it is common knowledge that an employment agency is a business dealing with a great body of our population, native and foreign born, which is susceptible to imposition, deception and immoral influences, and that the statute, in so far as the provisions mentioned are concerned, is within the police powers of the state. The court quoted the language of *Brazee* v. *Michigan,* 241 *U. S.* 340, as follows: "Considering our former opinions, it seems clear that, without violating the federal constitution, a state, exercising the police power, may require licenses for employment agencies and prescribe reasonable regulations in respect of them to be enforced according to the legal discretion of a commissioner." And in the Clark case our Court of Errors and Appeals further said:

"The power to grant a license under the statute has been vested in the commissioner within certain limits. It is obvious that, unless a hard and fast line of conditions is indicated in the legislation itself, the power of deciding upon the fitness of the applicant must be vested in some other authority if the purpose of the act is to be made effective. In the case of *Brazee* v. *Michigan, supra,* there were many regulations vested in the discretion of the commissioner of labor, and this authority was expressly sanctioned by the Supreme Court. Under section 10 of our own statute the commissioner of labor may refuse to issue any license 'for any good cause shown' within the meaning and purpose of the act. Among the conditions of obtaining such license are that the 'applicant shall be required to furnish satisfactory proof of good moral character in the form of affidavits,' and imposes upon the commissioner the duty of investigating the character of the applicant. Deeming the business as one justifying intervention of the legislature for the safety of the public morals and public health under its police powers, and that the power to determine the fitness and qualifications of those seeking to engage in the business was properly given to the commissioner, the question arises, Was the power legally

40

exercised in the individual case, the commissioner having refused the prosecutor's application for a license upon the grounds (1) that the applicant had already violated the statute by carrying on the business without a license, well knowing the legal requirements therefor, and (2) that the schedule of fees proposed by the relator were not approved by the commissioner?"

As already indicated, the statute provides that every applicant shall file with the commissioner "a schedule of fees proposed to be charged for the services rendered to employers seeking employes and persons seeking employment" (section 5), and that the commissioner "may refuse to issue * * * any license for any good cause shown within the meaning of this act."

We look upon this provision as a *regulation* of the business, and so, apparently, did the court in the Clark case, and such seems to be the rule supported by other authorities. See the cases collected in 6 *R. C. L.* 273, where in the text it is said: "The power of the legislature to regulate a business for the protection of the public carries with it the power to control and regulate the right to contract in relation to it. While, therefore, the right to contract may be subject to limitations growing out of the duties which the individual owes to society, the public or the government, the power of the legislature to limit such right must rest on some reasonable basis, and cannot be arbitrarily exercised."

Here the question argued is solely the constitutionality of the statute conferring the power. It is not contended that the power was unreasonably or arbitrarily exercised by the commissioner. No attack is made upon the finding of the commissioner that the fee schedule proposed to be charged "is excessive and unreasonable, and is more than the fee charged by some thirteen other similar agencies in this state, and is more than the average which is permitted or is charged in practice in other similar industrial states in this country."

Our conclusion is that the present attack upon the statute is without substance, and, accordingly, the writ is dismissed, with costs.